Dew, Executor, etc., Appellant, vs. Kuehn, Respondent.

*October 13 — November 3, 1885.*

*Wills: Devise of realty: Uncertainty as to estate given: Evidence of surrounding circumstances.*

1. Sec. 2278, R. S., does not exclude, in a proper case, the consideration of surrounding circumstances in determining the intent of a testator in a devise of land. It merely changes the common-law presumption that unless words of inheritance or other words indicating a greater estate are used, a life estate only is intended to be devised.

2. A will provided as follows:

"I hereby give and bequeath unto my beloved husband Charles F. Kuehn all my real estate situated in the town of Concord. Jefferson county and state of Wisconsin. on section eleven it being all my freehold estate whatsoever. which is situate in the town of Concord. Jefferson county and state of Wisconsin. I also give and bequeath unto my said husband. Charles F. Kuehn. all the rest residue and remainder of my personal estate chattels of whatsoever kind and nature whatsoever. to hold and keep for his natural life.

"I further direct that immediately after it shall be divided share and share alike between," etc.

At the time of executing the will and also at her death the personal property of the testatrix was insufficient to pay her debts. *Held,* that the limiting words "to hold and keep for his natural life" attach to the gift of the realty as well as to that of the personal property, and the husband takes but a life estate in such realty.

APPEAL from the Circuit Court for *Jefferson* County.

The case is stated in the opinion.

For the appellant there was a brief by *I. W. & G. W. Bird,* and oral argument by *Mr. G. W. Bird.* 1. The intention to give to the respondent only a life estate in the realty appears from the will itself. The limiting words are as inseparably connected with the devise as with the bequest; and the following paragraph disposes of a remainder in all the property given in the first paragraph. See *Knox v.*

*Knox,* 59 Wis. 172; *Urich's Appeal,* 86 Pa. St. 386; *Metcalf v. Framingham Parish,* 128 Mass. 370; *Ferson v. Dodge,* 23 Pick. 287. Illiterate persons' wills are construed liberally as to terms used, disregarding technical construction in ascertaining meaning. *Lytle v. Beveridge,* 58 N. Y. 592. In deeds, words govern the intention; in wills, the intention governs the words. *Edwards v. Bibb,* 43 Ala. 666. A general clause following several particulars, with which it is connected by the same punctuation, qualifies the whole. 17 Barb. 25, 86. 2. The surrounding facts and circumstances still further strengthen this construction. When the testatrix made the will, she had, in fact, only the land to divide between her husband and the other beneficiaries. She intended to give *some* property to the others; and only by construing the will as devising a life estate to the husband, can that intent prevail. See *Hopkins v. Holt,* 9 Wis. 228. 3. The evidence showing testatrix's instructions to the scrivener and her declarations upon the will being read to her, establishes her intention to devise only a life estate. Where the language of the will may apply to either one of two or more objects, or to different things, testimony of the testator's instructions and declarations is admissible to show to which the testator intended it to apply. *Morgan v. Burrows,* 45 Wis. 211; *Sherwood v. Sherwood,* id. 357; *Wheeler v. Hartshorn,* 40 id. 83.

*David W. Small,* for the respondent, contended that under sec. 2278, R. S., the devise in this will must be construed to convey all the estate which the testator possessed in the land. "Shall," as used in that section, denotes a positive command. *Smith v. Noe,* 30 Ind. 117; *Morris v. People,* 3 Denio, 381; *Rutherford v. Greene,* 2 Wheat. 196–8; *Groves v. Slaughter,* 15 Pet. 449–500; *Ex parte Jordan,* 94 U. S. 248. See, also, *Herbert v. Reed,* 16 Ves. Jr. 481; *Evans v. Thomas,* 6 Term, 671; *Mann v. Mann,* 14 Johns. 1; *Wilson v. Eden,* 11 Beav. 289; *Arenson v. Arenson,* 3 Denio, 458;

*Jackson v. Merrill,* 6 Johns. 186; *Jackson v. DeLancy,* 13 id. 537; *Evans v. Norton,* 4 Rawle, 69.

TAYLOR, J.    This is an appeal from the judgment of the circuit court of Jefferson county, construing the last will and testament of Mary Ann Kuehn, deceased.    The will under consideration was made February 17, 1879; the testatrix died October 10, 1881.    She was the wife of the respondent.    The whole will, excluding the formal parts and the clause appointing an executor, reads as follows:

"I hereby give and bequeath unto my beloved husband *Charles F. Kuehn* all my real estate situated in the town of Concord. Jefferson county and state of Wisconsin. on section eleven it being all my freehold estate whatsoever. which is situate in the town of Concord. Jefferson county and state of Wisconsin. I also give and bequeath unto my said husband. *Charles F. Kuehn.* all the rest residue and remainder of my personal estate chattels of whatsoever kind and nature whatsoever. to hold and keep for his natural life."

"I further direct that immediately after it shall be divided share and share alike between Angeline Graves Emma Graves. Elizabeth Graves and George Graves being now residents of Yorkshire England."

The only punctuation marks were dots, as indicated in the copy above, and there were but two paragraphs indicated.

The evidence also showed that on the 17th day of November, 1879, the testatrix gave her husband, the respondent, a note and mortgage for $700, to become due in three years after date, with interest at eight per cent.    The mortgage was on the same real estate described in the will.    It also appears that her personal property at the time of her decease was barely sufficient to pay her debts.    The appraised value of the personal estate was $925.66.    The ex-

ecutor was allowed $167.06 for depreciation on sale, leaving only $758.60 to be accounted for. The debts allowed against the estate were $596.25. Of these debts $431 were allowed as debts due from the estate to the husband of the deceased, in addition to the mortgage debt of $700. Whether, in the amount allowed the husband, the interest on the $700 from its date to the time the debts were adjusted was included, does not very plainly appear. Upon a settlement of the accounts of the executor, the payment of the debts allowed against the estate and the expenses of the executor exhausted all the personal property, leaving only the real estate, subject to the mortgage for $700, to be distributed under the will. The respondent claims that the real estate belongs to him in fee, and the circuit court so held. The executor, representing the residuary devisees, insists that, under the provisions of the will, *Kuehn*, the husband, takes only a life estate in said lands, and that the residuary devisees are entitled to the remainder, subject only to the payment of the $700 mortgage thereon held and owned by the respondent.

The contention of the counsel for the respondent is that the words at the end of the paragraph first above quoted, viz., "to hold and to keep for his natural life," relate only to the bequest of the personal property, and do not qualify or limit the devise of the real estate made in the previous part of the same paragraph. We think that, upon the mere consideration of the language used in the will, it is not entirely clear that the construction must be that the words of limitation are confined to the bequest of the personal estate. Were we able to determine from the will itself that the devise of the real estate was a separate and independent sentence, and was intended to be such by the writer, and that the bequest of the personal property was a separate sentence, then the contention that the limiting words had relation to the bequest only would be the proper

construction. But from the want of any attempt to punctuate the writing according to any known rules of punctuation, we are unable to say that the writer of the will intended the part of the paragraph devising the real estate as a separate and independent sentence, or that he did not intend the bequest as a part of the same sentence, and that the words "I also give," etc., were not intended as an addition to what was theretofore stated in the same sentence. The language is certainly not so plain that but one construction can be given to the words of limitation used in the will, and in that case it is the duty of the court to give such a construction to the words used as will evidently carry out the intention of the testatrix.

If we were permitted to consider what was said by the testatrix at the time of the execution of the will, and what the writer of the will meant by the language used, there could be no doubt as to the construction which should be put upon the limiting words. The court below found that if the intention of the testatrix as expressed at the time the will was executed, and the intention of the writer of the will, should govern its construction, then there could be no doubt but that the limiting words related both to the real and personal estate devised and bequeathed.

But the learned circuit judge decided, and we think rightly, that in giving a construction to the words of the will he was not at liberty to give any weight to the expressed intention of the testatrix at the time the will was executed, nor to the intention of the writer in drawing the will, and he finally decided that, notwithstanding the intention of the testatrix and the scrivener, the words of the will could only be construed as limiting the life estate to the personal property, and that as to the real estate the respondent took the fee. In this we think the learned circuit judge erred, even upon the words of the will, without any regard to the attendant circumstances. It is not clear that an es-

tate in fee of the real estate was given to the respondent. The words "to hold and keep for his natural life" do not very aptly describe a life estate in personal property, while they are such words as would be naturally used by a person not having a technical education to express a life estate in real property.

If we consider the situation of the property of the testatrix at the time she made her will, and what was done between her and her husband after the will was executed, we think it is quite clear that the words of the will should be construed as giving a life estate only in the real property. That the testatrix expected that there would be a remainder of her estate left for the persons mentioned as the residuary devisees or legatees is very clear upon the face of the will, and yet upon the construction given to the will by the learned circuit judge it is evident nothing could pass under the clause giving the remainder of the life estate to her relatives mentioned in the last clause of her will. It appears that she was indebted to her husband at the time she made her will in a considerable sum, and nine months after making her will she gave him her note for $700, secured by a mortgage upon the same real estate he now claims was devised to him in fee by her will, the existence and contents of which were then known to him. In less than two years from the date of the will the testatrix died, and did not have personal property sufficient to pay her debts, and leaving her real estate incumbered by the mortgage of $700, with some interest thereon unpaid; how much, as said above, does not clearly appear. In the light of these facts it would seem absurd to construe her will as giving a life estate only in the personal property, when it was evident to the testatrix that such property would be entirely consumed in the payment of her debts.

It was contended by the learned counsel for the respondent that in construing the language of the will for the pur-

pose of determining whether a life estate or an estate in fee was intended to be conveyed by the words used, nothing but the words of the will itself could be considered, and that the court was not at liberty to construe the words used in the light of the circumstances surrounding the testatrix at the time of the execution of the will. This claim is made upon the strength of sec. 2278, R. S. 1878, which reads as follows: "Every devise of land in any will shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it clearly appear by the will that the devisor intended to convey a less estate." This section has been a part of the law of this state since the revision of 1849.

Under the common law, in order to devise lands or real estate to a devisee in fee, it was necessary to use words of inheritance, or some other words showing an intention to give such estate, and a mere devise of real estate by description, without words of inheritance, gave such devisee only a life estate. See 3 Jarman on Wills (5th Am. ed.), 30 *et seq.*, and notes. Jarman says: "The proper and technical mode of limiting an estate in fee simple is to give the property to the devisee and his heirs, or to him, his heirs and assigns, forever; but such an estate may, even under will made before 1838, be created by any expressions, however informal, which denote the intention." This common-law rule was changed in England by act of Parliament in 1837, by a law quite similar to our sec. 2278, above quoted.

Our statute was undoubtedly enacted to get rid of the questions which might arise upon the construction of devises of real property under the common-law rule, by declaring that "every devise of land in a will shall be construed to convey all the estate of the devisor therein, without regard to the words used in the devise, unless," etc.; thus changing the rule as to the presumption of the estate devised. Under the common-law rule the presumption was

that only a life estate was intended to be conveyed, unless words of inheritance were used, or other words showing an intent to devise a greater estate. This act was not intended in any other respect to restrict the power of the court, in the construction of wills, by limiting the courts in all cases of devises of real estate to the words of the will alone in determining the extent of the estate devised, unaffected by the surrounding circumstances which may properly have force and be considered in construing the language used by the testator and thus determining the real intent of the testator by the use of such language.

In view of the uncertainty which exists in the language of the will itself, occasioned by the want of accurate knowledge on the part of the writer as to the construction of sentences, apparent on its face, and of the fact that the testatrix had not, at the time of the execution of the will, and at the time of her decease, personal property enough to pay her just debts, we think it sufficiently appears that it was the intention of the testatrix that the limiting words in the will should attach to the real as well as personal estate devised, and that it should be construed as giving the respondent a life estate only in the real estate of which she died seized, situate in the said town of Concord, Jefferson county. We think such construction of this will is in harmony with the decisions of this court that, in the construction of the language used by a testator in his will, his manifest intention should be carried out, when it can be without doing violence to the meaning of the language used. *Eastman's Estate*, 24 Wis. 556; *Yearnshaw's Appeal*, 25 Wis. 21; *Golder v. Littlejohn*, 30 Wis. 344; *Estate of Goodrich*, 38 Wis. 492, 496; *Hopkins v. Holt*, 9 Wis. 228; *Wolf v. Shæffner*, 51 Wis. 53.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to that court to enter judgment in accordance with this opinion.