DEBORAH HENDERSON

*v.*

WILLIAM BLACKBURN.

*Filed at Springfield September 28, 1882.*

1. WILL—*devise with power of disposition—extent of the power, and whether properly exercised.* The doctrine seems to be quite well settled that where a power of disposal accompanies a bequest or devise of a life estate, the power of disposal is only coëxtensive with the estate which the devisee takes under the will, and means such disposal as a tenant for life could make, unless there are other words clearly indicating that a larger power was intended.

2. Where a devise is made of all the testator's real and personal estate, after the payment of his debts and funeral expenses, to his wife, "to have and to hold, or to dispose of so much of the same as she may need or wish to use during her lifetime," and the will then providing, "and after her death, if there is anything left," what is left shall be divided equally, etc., the

widow's power of disposal will not be limited to her life estate. In such case, if she needs all the property for her support during her life, she may dispose of the whole of it for such purpose, or she may sell absolutely, and dispose of so much thereof as is needed for her support.

3. The words in a will, "if there is anything left," and providing to whom the same shall go, following a devise of an estate in all the testator's estate, real and personal, "to have and to hold, or dispose of so much of the same as she (the devisee) may need or wish to use during her lifetime," imply a power of disposition of the whole property devised, and those words, and the words following thereafter, "whatever there may be left," are not to be limited to the personal estate. Such power of disposition of the fee, however, is not an absolute one, but is limited to the need and personal use of the devisee. The power can not be exercised for any other purpose.

4. Under a power given to a devisee of a life estate "to dispose of so much of the same as" the devisee "may *need* or wish to *use* during her life-time," she made a conveyance of the property, reserving therein the right, title and possession during her life, with the use and profits thereof, and at her death to take effect and be in force, the grantee to attend to the property and keep it in repair, and attend to the instructions of the grantor in making such repairs, and to attend to her wants generally: *Held*, that the convey-ance was in the nature of a testamentary devise, which she was not author-ized to make, and passed no title to the grantee.

5. Where a widow, to whom was devised a life estate in land, with a power to dispose of so much thereof in fee as she might need or wish to use during her life, conveys the same to another, evidence that at the time the devise was made the devisee was about eighty-five or ninety years old, and the testator resided on a farm of two hundred acres, about half of which was in cultivation, worth an annual rental of at least three dollars per acre, and owned personal property, also given her, of the value of $4000 or $5000, mostly in interest-bearing notes, all of which he owned at his death, and that the widow continued to reside on the homestead until her death, and that there was paid to her, on settlement of the estate, nearly $2000 in money, is properly admissible as bearing upon the question whether the dis-position of the land was needed for the support of the widow, or was in truth made for her own personal use.

APPEAL from the Circuit Court of Clark county; the Hon. C. B. SMITH, Judge, presiding.

This was an action of ejectment, brought by Deborah Henderson, against William Blackburn, for two certain tracts of land, situated in Clark county. There was a judgment for the defendant, and the plaintiff appealed.

Both parties claim title from a common source,—the will of Julius H. Blackburn, deceased, who died testate January 12, 1869. The will, among others, contains the two following clauses:

"*Second*—After the payment of said funeral expenses and debts, I give, devise and bequeath unto my beloved wife, Polly Blackburn, all of my estate, both real and personal, to have and to hold, or to dispose of so much of the same as she may need, or wish to use, during her lifetime.

"*Third*—And after her death, if there is anything left, it is my will that whatever there may be left shall be divided equally between William Blackburn, my son, and my daughter, Deborah Hogue, wife of William Hogue."

The Deborah Hogue mentioned in the will, is now Deborah Henderson, the plaintiff in the suit, and the William Blackburn named, is the defendant.

On the trial, to show title on her part, the plaintiff introduced in evidence said will, and the record of two judgments in the Clark circuit court against William Blackburn, the defendant,—one obtained at the April term, 1869, and the other at the November term, 1873,—together with regular sheriff's deeds, of the dates, respectively, of June 17, 1874, and January 11, 1876, under sheriff's sales, on executions issued upon the judgments, to one Lindsey, conveying to him all the interest of the defendant in the lands of which Julius H. Blackburn died seized, and a deed from Lindsey quitclaiming to the plaintiff all Lindsey's interest in the lands in controversy in this suit, being part of the lands conveyed to him by such sheriff's deeds. The sheriff's sales were made in 1874. Polly Blackburn, wife of Julius H. Blackburn, died September 26, 1878.

The defendant introduced in evidence a deed from Polly Blackburn to himself, dated December 3, 1875, purporting to convey to him the premises in controversy, being lands of which Julius H. Blackburn died seized, the deed containing

the following: "Now, the condition of this indenture is this: That Polly Blackburn shall still retain the right, title and possession of the above described property so long as she lives, and nothing herein shall be construed so as to deprive her of all the rights, title and profits of the within named premises while she lives, but after her death the property, as described in this deed, shall belong to William H. Blackburn and his heirs, as described in this indenture, and this deed will have full force and effect; and William H. Blackburn also agrees to attend to the above described property, and keep it in repair, and attend to the instructions of Polly Blackburn in making such repairs as she thinks needful, and attend to her wants generally, so long as she lives, and at her death this deed shall be in force."

Messrs. GOLDEN & WILKIN, for the appellant:

Under the will the widow took an estate for life, with remainder to the parties to this suit, and the power of disposal conferred on her was only coëxtensive with the estate she took under the will,—that is to say, power was granted her to dispose of her life estate,—and consequently her deed to appellee, if it ever took effect, ceased to represent any estate after her death. The phrase, "if there is anything left, it is my will that whatever may be left," should be limited to the personal property only. *Boyd* v. *Strahan*, 36 Ill. 355; *Bradley* v. *Westcott*, 13 Ves. 445; *Smith* v. *Bell*, 6 Pet. 68; *Siegwald* v. *Siegwald*, 37 Ill. 430; *Mulberry* v. *Mulberry*, 50 id. 67; *Burnett* v. *Lester*, 53 id. 325; *Green* v. *Hewitt*, 97 id. 113; *Brant* v. *Virginia*, 93 U. S. 326.

The court erred in excluding the evidence offered to show the circumstances under which the will was made, the state of the testator's property, etc. *Giles* v. *Little*, 104 U. S. 291; *Brownfield* v. *Wilson*, 78 Ill. 472; 1 Redfield on Wills, 425, note 6, rule 10.

The appellee's interest was a vested remainder in the lands of which his father died seized, which was sold by the sheriff. *Green* v. *Hewitt*, 97 Ill. 117.

Mr. S. S. WHITEHEAD, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The controversy in this case is upon the construction of the second and third clauses of the will of Julius H. Blackburn—what, thereunder, was the power of disposition of the real estate devised, which was, given to the widow, Polly Blackburn.

It appears to be the quite well settled doctrine that where a power of disposal accompanies a bequest or devise of a life estate, the power of disposal is only coëxtensive with the estate which the devisee takes under the will, and means such disposal as a tenant for life could make, unless there are other words clearly indicating that a larger power was intended. *Bradley* v. *Westcott*, 13 Ves. 445; *Smith* v. *Bell*, 6 Pet. 68; *Boyd* v. *Strahan*, 36 Ill. 355; *Siegwald* v. *Siegwald*, 37 id. 430; *Mulberry* v. *Mulberry*, 50 id. 67; *Brant* v. *Virginia Coal and Iron Co.* 93 U. S. 326; *Giles* v. *Little*, 104 U. S. 291. This doctrine is relied upon in favor of the appellant, it being insisted that it was a life estate which was here devised to the widow, and that the power of disposal which was given to her was such disposal only as a tenant for life could make. There was not here a devise of an estate for life in express terms, but the devise was, "to have and to hold, or to dispose of so much of the same as she may need or wish to use during her lifetime." The power being given to dispose of so much of the property as she might need or wish to use during her lifetime, we can not doubt that had the widow needed all this property for her support during her lifetime, she might have disposed of the whole of it for such purpose, the power to do so being given in express

terms.    The form of the power of disposal given in this case being "of so much of the property as the widow might need or wish to use during her lifetime," excludes the idea that it was only a life interest which she might dispose of, and plainly intends the power of disposition of the whole interest in the property for the purpose named.

The words in the third clause of the will, "and after her death, if there is anything left," imply a power of disposition by the widow of the whole property devised.    There are cases which hold where, by will, there is given a life estate in real and personal property, and there is a devise over in somewhat similar phrase as the above, as in *Siegwald* v. *Siegwald*, "what may be left," in *Green* v. *Hewitt*, 97 Ill. 113, and *Giles* v. *Little*, above, "or whatever remains," that those words are to be limited to the personal estate, and do not apply to the real estate; or, as in *Blanchard* v. *Blanchard*, 1 Allen, 223, that the words meant the property left after the life estate had terminated.    But the words here used, "if there is anything left," do not admit of such construction. These words imply that there might not be anything whatever left of either real or personal property, they expressing a doubt whether there would be anything left after the death of the widow, showing that it was then in the contemplation of the testator that the widow might dispose of the entire interest in the real property, leaving nothing, and thus that he intended she should have such power of disposition.

In the recent case of *Clark et al.* v. *Middlesworth*, (Sup. Ct. Ind.) it was held, where the language of a devise was, "all my property, real and personal, to my wife, Mary A. Clark, during her life, and at her death, should anything remain, the same to be divided among my heirs at law," that this was a devise of a life estate, coupled with a power of alienation; that such power was given the widow by the clearest implication, by the words, "and at her death, should anything remain."    And see *Paine* v. *Barnes*, 100 Mass. 470.

We find in the will under consideration, the words which we have adverted to clearly indicating that a larger power of disposal was intended to be given by the will than that of a life estate, a power of disposal of the fee, and hence that the case does not come within the doctrine relied upon limiting the right of disposition to the life estate, where there is a power of disposal accompanying a devise of a life estate.

But although we find that by this will there was given to the widow the power of disposition in fee of the real estate devised, yet it was not an absolute power of disposal which was given,—it was a power only "to dispose of so much of the same as she may need or wish to use during her lifetime." The power of disposition was limited to the need and personal use of the widow. For such purpose she might dispose of the property, but not for any other purpose. Does the deed in question, of the widow to William Blackburn, come within the limit of the power as a disposition of the property for the widow's own need and personal use, or for another and different purpose, and so not authorized by the power given by the will? We are inclined to view this deed in the latter light. By the deed itself, instead of disposing of the property to meet any need or personal use of the widow herself, the property is expressly retained for her use and enjoyment so long as she lives, and it is not until her death that the deed is to take effect. The purport of the instrument is to dispose of the use and enjoyment of the property after her death—to be in reality for the benefit of the grantee, rather than to meet the requirement of any need or use of the grantor. Upon its face the deed appears to us to be in substantial effect in the nature of a testamentary disposition in favor of William Blackburn, the grantee. Clearly, the widow was not authorized by the will to make a devise of the land.

The minor requirements which the deed contains looking to the interest of the grantor, as, that the grantee shall attend to the property, keep it in repair, and attend to the

wants generally of the grantor, we do not regard as sufficient to stamp the object of the deed as for the need and personal use of the grantor. It still appears to us to bear the character of a conveyance made in the interest and for the benefit of William H. Blackburn, rather than a disposition of the property, as contemplated by the will, for the need and personal use of the widow, and not to be a fair execution of the power which was conferred by the will. It follows that the instructions of the court below to the jury, that the will vested Mrs. Blackburn with full ownership of the land devised, and that her deed to William Blackburn conveyed to him the perfect title of the land, were erroneous.

The court excluded proof which was offered on the trial that at the time the testator made his will his wife was about eighty-five or ninety years old; that he owned and resided on a farm of two hundred acres of land, over one hundred acres in cultivation, worth an annual rental of at least three dollars per acre; that he owned personal property of the value of $4000 or $5000, mostly interest-bearing notes; that he owned and possessed all said property at his death, in January, 1869; that his widow continued to reside on the homestead until her death, and that there was paid to her in June, 1871, on a final settlement of her husband's estate, nearly $2000 in money. We think this testimony might properly have been received as bearing upon the question whether the disposition of the land was needed for the support of the widow, or was, in truth, made for her personal use.

The judgment will be reversed, and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCHOLFIELD took no part.