Horn v. Sayer, 184 Ill. App. 326.

---

Isaac Horn, Petitioner, Appellee, v. Sallie F. Sayer et al., Appellants.

1. JUDGMENT, § 603*—*limitations.* While the lien of a judgment expires in seven years, it may be renewed or an action brought on it at any time within twenty years after its date.

2. EXECUTORS AND ADMINISTRATORS, § 293*—*when claim allowed against an estate is a lien on the entire estate.* A claim presented and allowed before an executrix files an inventory is a lien on the entire estate that may be collected in any manner in which the collection of claims allowed against estates may be collected.

3. POWERS, § 6—*power of devisee to dispose of property.* Where a widow is devised property by her husband with power only to convey same to their children, a conveyance by her to third parties being void, a subsequent conveyance by her to the children with provision that the conveyance is to inure to the benefit of the former grantees is also void, as being an attempt to do indirectly what could not be done directly.

4. EXECUTORS AND ADMINISTRATORS, § 386*—*jurisdiction to enforce payment of claims allowed against estate.* The payment of a claim allowed against an estate may be enforced in the Probate Court or it may be enforced in a court of equity if the remedy in the Probate Court is inadequate and there are reasons why a court of equity should take jurisdiction.

5. EXECUTORS AND ADMINISTRATORS, § 386*—*when person having claim allowed against estate may intervene in partition proceeding to enforce payment.* On bill filed by sole beneficiary under a will for partition of certain lands of which complainant's husband died seized of an interest therein, such interest being the share of the deceased in his father's estate, and comprising his whole estate, *held* that a person having a claim allowed against the estate of complainant's husband was entitled to intervene for the purpose of collecting his claim on filing a petition in the nature of a cross-bill, alleging that the interest of complainant's husband in the lands had been fraudulently conveyed by the widow of testator's father in violation of the power under the testator's father's will.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

6. EQUITY, § 362*—*when dismissal of bill to defeat intervenor's claim is fraudulent.* Where sole devisee under a will files a bill for partition of lands in which testator had an interest, and a person having a claim allowed against the estate, intervenes to enforce claim, *held* that an arrangement between complainant and defendants whereby defendants paid complainant a certain sum for her interest in the lands upon claimant dismissing her bill and executing to defendants quitclaim deeds showing an attempt by complainant with aid of defendants to fraudulently appropriate the estate to her own use and to defeat the collection of intervenor's claim.

7. ABATEMENT AND REVIVAL, § 30*—*when plea to jurisdiction of court may be stricken.* When an intervenor in a partition proceeding files a supplementary petition after the original bill has been dismissed by an agreement between the complainant and defendants, action of court in striking a plea filed to the jurisdiction of the court, setting up that the defendants were not residents of the county in which suit was brought, *held* not error, a part of the real estate involved being situated in the county of suit, and it appearing that the plea was only on behalf of some of the defendants and there were other defendants found in the county and the plea does not state the names and residences of the other defendants and that there were no necessary defendants residing in the county.

Appeal from the Circuit Court of Moultrie county; the Hon. WILLIAM G. COCHRAN, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed October 16, 1913. *Certiorari* denied by Supreme Court (making opinion final.)

JAMES A. CONNOLLY and A. J. FRYER, for appellants.

F. M. HARBAUGH and F. J. THOMPSON, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

In February, 1910, Clara E. Humphreys filed a bill in chancery in the Circuit Court of Moultrie County against Sallie F. Sayer, Sinia A. Norfolk and various other defendants, praying for the partition of certain lots in Sullivan in Moultrie County, a quarter section of land in Edgar County, a quarter section of land in Shelby County, and a large amount of other described real estate in Moultrie, Shelby, Edgar and Coles counties, Illinois, in which she alleged she was the owner of a one-fourth interest as sole devisee of her former

husband, Xavier B. Trower, who it is alleged died seized of said real estate. Isaac Horn, who had presented a claim against the estate of Xavier B. Trower, which had been allowed, was permitted at the March term, 1910, to intervene, and filed an intervening petition in the nature of a cross-bill containing full allegations of fact and praying for relief.

The record shows the following facts. X. B. Trower died testate December 7, 1896, in Christian County, leaving a widow, Clara E. Trower, now Humphreys, who is the sole beneficiary under his will. The will was probated and the widow qualified as executrix. X. B. Trower prior to 1877 was engaged in running a private bank in Charleston, Illinois, where he failed in business that year. Isaac Horn was one of the depositors in the bank. At the November term, 1891, of the Circuit Court of Christian County, Isaac Horn recovered a judgment against X. B. Trower for $1,048.26. An execution was issued on this judgment within a year after its rendition and delivered to the sheriff of Christian County, where Trower resided. The sheriff being unable to find any property on which to levy said execution returned it unsatisfied. After the issuing of letters testamentary on the estate of X. B. Trower, this judgment being unpaid, was presented as a claim against the estate of the deceased and on December 2, 1907, allowed in the sum of $1,963.98 as a seventh class claim against the estate. The executrix did not file any inventory in the estate of her deceased husband, and does not appear to have taken any steps to close up the estate and has never been discharged as such executrix. The claim of Isaac Horn is still due and unpaid.

X. B. Trower was a son of Thomas B. and Polly A. Trower of Charleston. On August 20, 1877, after the bank failure of X. B. Trower in 1877, Polly A. Trower and X. B. Trower made an agreement in writing, in two parts, each being stated to be the consideration for the other, in reference to the prospective interests of X. B.

Trower in the estate of Thomas B. Trower, who was still living. The purport of the first part of this agreement is that X. B. Trower should have a certain described farm in Edgar County, a certain described farm in Shelby County and a bank building in Sullivan in lieu of all other interest in his father's estate. This part of the agreement was signed by Polly A. Trower. The other part of this agreement was signed by X. B. Trower and assigns all his prospective interest in his father's estate to the heirs and executors of said estate.

Thomas B. Trower died testate in April, 1878, in Coles County, Illinois, leaving Polly A. Trower, his widow, and X. B. Trower with three other children surviving him. By his will he devised his estate to his wife, Polly A. Trower, "to have and to hold for the future benefit of herself and children, and which she may dispose of to our children in such just and proper proportions as necessary and due regard to prudence may dictate, as long as she remains unmarried and my widow, but on her decease or marriage I give and devise the remainder of my said estate to my children, viz: Mrs. Lemuel L. Silverton, Xavier B. Trower, Sinia A. Norfolk and Sallie F. Sayer, in equitable proportions, as may be deemed right and proper, taking into account what they have had heretofore, which will appear from a book kept by myself for the purpose of showing that to them and their heirs, to have and to hold the same in fee simple forever." The will appoints Polly A. Trower executrix; it was probated and she qualified.

On August 17, 1895, Polly A. Trower and her three daughters conveyed by warranty deed to William R. Titus for $2,500 twenty-three feet off of the north part of lot two, and all of lot one in block twelve, in the city of Sullivan in Moultrie County.

On April 25, 1897, Polly A. Trower and her three daughters, their husbands joining therein, for a valuable consideration conveyed to Jacob Galster, by warranty deed, the Shelby County farm of which Thomas

B. Trower died seized, and which is described in the contract of August 20, 1877, signed by Polly A. Trower; and on November 13, 1897, the same grantors for a valuable consideration conveyed to George W. Julian the Edgar County farm described in the contract of August 20th.

On February 18, 1903, Polly A. Trower conveyed the said land in Shelby County to Sallie F. Sayer. The deed recited that it is for the consideration of one dollar and "this deed is made to more completely invest Sallie F. Sayer with title to said premises and to inure to the benefit of any grantee to whom she may have conveyed said premises." On July 10, 1905, Sallie F. Sayer executed a deed of the Shelby County land to Jacob Galster in consideration of one dollar. This deed recites that it is made to the grantee to perfect the title to said premises, the mother of said Sallie F. Sayer having made a deed to same premises on the 18th day of February, 1903, by virtue of a power to so convey the same contained in the will of Thomas B. Trower, father of said Sallie F. Sayer. On the same day that Polly A. Trower made the deed of the Shelby County land to Sallie F. Sayer she made a deed of the Edgar County land to Sinia A. Norfolk, which contains a similar recital to that in the deed made by Polly A. Trower to Sallie F. Sayer. On July 10, 1905, Sinia A. Norfolk conveyed by deed to the heirs of George W. Julian the Shelby County land; this deed contains a recital similar to that in the deed made by Sallie F. Sayer to Galster.

The original petition of the intervenor together with an amended petition sets forth the foregoing facts and alleges that the deeds executed by Polly A. Trower in 1903 were not made in good faith for the purpose of conveying the property therein described to the daughters of Thomas B. Trower, but that said conveyances were made to inure to the benefit of grantees of said daughters and are fraudulent and void as against the claim of the intervenor. It is also alleged

that Polly A. Trower held the title to said real estate in trust for the children of Thomas B. Trower, one-fourth part thereof for X. B. Trower with no general right to convey the same, but only the right to convey the same to the children of Thomas B. Trower as necessity might require; sets forth the wills of Thomas B. Trower and X. B. Trower and makes all necessary parties, parties defendant to the petition. A supplemental petition further alleges that on July 31, 1911, Clara E. Humphreys compromised and settled the suit for partition in consideration of $4,200 paid to her by Sinia A. Norfolk and Sallie F. Sayer and the release of Clara E. Humphreys from the payment of the costs which had been adjudged against her in former litigation concerning this same real estate, and signed a stipulation for the dismissal of her bill for partition, and executed and delivered the following deeds:

(1) A quitclaim deed conveying for an expressed consideration of $500 to William R. Titus, who was in possession of it, all her interest in the twenty-three feet off of the north side of lot two in block twelve in the city of Sullivan; (2) A quitclaim deed conveying to F. M. Craig, who was in possession of it, all her interest in lot one in block twelve in Sullivan for $500; (3) a quitclaim deed conveying for $500 all her interest in the Edgar County farm to Michael Gossett, who in 1907 had secured deeds from the Julian heirs of all their interest in the Edgar County farm; and (4) a quitclaim deed conveying for $500 all her interest in the Shelby County farm to William Miller, who had bought the interest of Jacob Galster in the said Shelby County farm. It is stipulated that these deeds were made as a part of the settlement of the partition suit. The grantees in these deeds are parties to this suit but have not joined in this appeal.

The record in this cause is very imperfect. The cause would appear to have been referred to a special master before the dismissal of the original bill for partition. After the compromise and dismissal of the or-

iginal bill for partition, and the filing of the supplemental petition by the intervenor and the joining of issues, the cause was re-referred to the regular master in chancery, who made a report of evidence with conclusions. The final decree in the case shows that an exception by appellants to the conclusions was sustained for the reason that the reference did not authorize the master to report his conclusions. The record filed here does not contain any order of reference. The cause was heard by the court, findings were made and a decree entered on evidence introduced on the trial, which is contained in the report of the master. A certificate of evidence signed by the trial court states that the foregoing evidence contained in the report of the master in chancery was all the evidence introduced and heard by the court on the trial of the cause. The certificate of the clerk to the record does not state that the record contains the certificate of evidence but states that it contains certain named pleadings, and the report of evidence made by the master except certain parts thereof. There is no formal beginning of a certificate of evidence in the record from which it can be ascertained where the record proper ends and the certificate of evidence begins.

On the hearing, the court, after finding the facts, among others that there was due Isaac Horn on May 11, 1912, the sum of $2,400.14 from the estate of Xavier B. Trower on the claim allowed in the Probate Court on December 2, 1907, and that all parties who had received deeds of conveyance of the one-fourth interest of Xavier B. Trower in the two described quarter sections of land and said property in Sullivan took such deeds with notice of the claim of Isaac Horn and were not innocent purchasers of said interest, entered a decree finding said conveyances to be void so far as they interfered with the collection of the claim of Isaac Horn, and ordered that the estate of Xavier B. Trower pay to Isaac Horn the sum of $2,400.14 with legal interest from May 11, 1912, within forty days, and in

default thereof, that the master in chancery sell, first the undivided one-fourth interest in the said described lots in Sullivan, in Moultrie County, to pay said sum and costs, then that he sell the undivided one-fourth interest of the said described quarter section of land in Shelby County, and if the said real estate in Moultrie and Shelby counties does not bring sufficient to pay said claim and costs, then that he sell the said described real estate in Edgar County and bring the money into court to abide the further order of the court. The decree dismisses the intervening petition as to defendants interested in other lands in Coles County. The defendants Sallie F. Sayer and Sinia A. Norfolk appeal.

In 1902 Clara E. Trower, now Humphreys, filed a bill in equity against Polly A. Trower and the purchasers of said real estate described in said deeds to compel a specific performance of the said contract of August 20, 1877, between Polly A. Trower and X. B. Trower. The defendants answered and the Circuit Court on a hearing entered a decree for specific performance. The decree was reversed by the Supreme Court and remanded with directions (*Sayer v. Humphreys*, 216 Ill. 426), that court holding that the contract was void and that under the will of Thomas B. Trower, Polly A. Trower had no right to convey the real estate of which Thomas B. Trower died seized to any person except to his children, and that the fee to the real estate in question vested in the children of Thomas B. Trower subject to be divested by the conveyance thereof by Polly A. Trower to a child or one or more of the children of Thomas B. Trower. The opinion holds that ''at the time of the death of X. B. Trower he therefore was seized of the one-fourth part of said Shelby and Edgar county farms, which interest was never divested by conveyance by Polly A. Trower to a child or the children of Thomas B. and Polly A. Trower to Sallie F. Sayer in fee.'' The name of Isaac Horn does not appear in the opinion in 216 Ill.

Polly A. Trower died in 1904, before the case was disposed of by the Supreme Court. After the reversal of the case it was redocketed in the Circuit Court, and Clara E. Humphreys sought to amend her bill so as to recover as devisee of X. B. Trower deceased, and Horn, who at the same time had been permitted to intervene, sought to amend his cross-bill so as to enforce the collection of his claim. The Circuit Court struck the amended bill and the cross-bill from the files and dismissed both bills for the reason that the cause of action stated in the original bill had been disposed of on the merits by the Supreme Court. From that decree an appeal was again prosecuted to the Supreme Court where the case was affirmed. *Humphreys v. Sayer,* 242 Ill. 80.

The former suit between Mrs. Humphreys and Polly A. Trower and others is not referred to in the pleadings in this case, but the foregoing reference to that litigation is made for the purpose of showing that the Supreme Court has construed the provisions of the will of Thomas B. Trower and the effect of deeds made by Polly A. Trower to third parties, and held void the assignment made by X. B. Trower of his interest in the estate of Thomas B. Trower, and these questions are involved in this case.

It is insisted that the lien of the judgment against X. B. Trower expired in seven years after the date of the judgment, and that a court of equity did not have jurisdiction over the subject-matter of this litigation. While the lien of the judgment would expire in seven years, yet it might be renewed or an action brought on it at any time within twenty years after its date. R. S. c. 83, ¶ 26 (J. & A., ¶ 7221.)

The purpose of the intervening petition is to collect the claim of $1,963.98 allowed against the estate of X. B. Trower in the Probate Court of Christian County on December 2, 1907. Under the will of X. B. Trower, Clara E. Humphreys is the sole beneficiary and took all real estate charged with the payment of his debts.

X. B. Trower died in 1896.  He left no personal estate or real estate except his interest in the estate of his father, Thomas B. Trower.  His will was probated in September, 1897, and Clara E. Humphreys qualified as executrix.  She has neither filed any inventory nor taken any steps to close the estate or to pay this claim from the assets, although fifteen years have elapsed since she qualified as executrix.  In December, 1907, the claim of Horn against the estate being called for trial in the Probate Court, by agreement between Horn and the executrix, it was allowed in the sum of $1,-963.98.  The record does not show when the claim was first presented, but no inventory having been filed, the claim allowed was a lien on the entire estate that could be collected in any manner in which the collection of claims allowed against estates may be enforced. It was held in *Humphreys v. Sayer, supra*, that the grantees of Polly A. Trower, other than the children of Thomas B. Trower, were not innocent purchasers of the interest of X. B. Trower in the estate of his father.  The record in this case shows that after the intervening petition was filed the appellants paid to the executrix, the beneficiary under the will, $4,200 for conveyances from her as devisee of X. B. Trower of her interest in the real estate devised to him by his father.  It also shows that Clara E. Humphreys, as executrix of X. B. Trower, fraudulently with the aid of appellants attempted to appropriate the estate to her own use and to defeat the collection of this claim by the conveyance of the estate to appellants and by the attempt to deprive the court of jurisdiction of this case by a dismissal of the original bill, and also that Clara E. Humphreys is insolvent.

The claim of the intervenor is not sought to be enforced on the ground that it was a lien because of the judgment obtained against Trower in his lifetime, but on the theory that it is a claim allowed against the estate, and all purchasers from heirs and devisees take subject to the payment of claims allowed against an

estate. The payment of this claim might have been enforced in the Probate Court, or it may be enforced in a court of equity, if the remedy in the Probate Court was inadequate and there were reasons why a court of equity should take jurisdiction. Fraud is one of the heads of original equity jurisdiction. With very limited exceptions it may be said that courts of equity "possess a general, and perhaps a universal concurrent jurisdiction with courts of law in cases of fraud cognizable in the latter; and exclusive jurisdiction in cases of fraud beyond the reach of courts of law," 1 Story's Eq. Jur. sec. 184. It is very clear that the Probate Court did not have jurisdiction to grant the relief that the nature of this case requires. A bill in chancery will lie to establish a debt of an ancestor and decree it a lien on his real estate and order the debt paid and in default of payment that the real estate be sold to satisfy the debt. *McConnel v. Smith,* 39 Ill. 279. Equity will take jurisdiction of the settlement of an estate to afford relief to a creditor whose claim has been allowed in the County Court, where some satisfactory reason exists why the County Court cannot grant the relief, the facts require that justice and equity may be done. *Elting v. First Nat. Bank of Biggsville,* 173 Ill. 368; *Patterson v. Patterson,* 251 Ill. 153. There was no error in permitting appellee to intervene and in overruling the demurrer and appellant's motion to strike the petition.

Appellants at the September term, 1911, filed a plea to the jurisdiction of the court setting out that they were not residents of Moultrie county and that the suit in which the petition of intervention was filed had been settled. Appellee filed a motion to strike this plea and the same was allowed. Appellants insist this ruling of the court was error. Part of the real estate involved in this suit is in Moultrie County. Under the Chancery Act (chapter 22, sec. 3, J. & A. ¶ 883) suits in chancery affecting real estate may be maintained in any county where any part of the real estate is situ-

ated. It further appears that this plea was only on behalf of some of the defendants and there were other defendants found in the county and the plea does not state the names and residences of the other defendants and that there were no necessary defendants resident in the county. There was no error in the order of the court.

The real estate in Sullivan, in Moultrie County, decreed by the court to be the first sold to pay the claim of the intervenor, was owned by Thomas B. Trower at the time of his death, and under the will of Thomas B. Trower, X. B. Trower became the owner of one-fourth of it subject to be divested by a deed by Polly A. Trower to a child of the deceased. This real estate was never conveyed by Polly A. Trower to any child of Thomas B. Trower, and the trial court finds in its decree that this real estate is not the business property mentioned in the opinion in *Humphreys v. Sayer, supra.*

In construing the will of Thomas B. Trower the Supreme Court held that X. B. Trower died seized of a one-fourth interest in the other real estate decreed by the court in this case to be sold, subject to be divested by a conveyance by Polly A. Trower and to a child or children of Thomas B. Trower. In 1897, Polly A. Trower and her three daughters joined in warranty deeds attempting to convey the Shelby and Edgar county farms to Julian and Galster.

These deeds were void because the authority to execute them was not within the power conferred by the will of Thomas B. Trower. The grantors therein were liable on their warranties. The subsequent conveyances made February 3, 1903, by Polly A. Trower attempting to convey these farms to Sallie F. Sayer and Sinia A. Norfolk inured to the benefit of Julian and Galster even if the latter deeds had not contained such express provisions. The daughters having, in 1907, conveyed these lands by warranty deeds, the reason for the exercise of the power under the will of Thomas

B. Trower ceased to exist and the power also had ceased to exist. *Smyth v. Taylor,* 21 Ill. 296; 2 Sugden on Powers, 178. The deeds made in 1903 were conveyances in the interest of Julian and Galster to perfect the title in them and not deeds made to carry out the powers in the will of Thomas B. Trower. They were fraudulent for the reason they were an attempt to do indirectly what could not be done directly. *Henderson v. Blackburn,* 104 Ill. 227; *Whiton v. Whiton,* 179 Ill. 32; *Griffin v. Griffin,* 141 Ill. 373.

Appellants have neither by any assignment of error nor argument raised any question concerning either title by possession and payment of taxes or the numerical order in which the pieces of real estate should be sold.

The decree is justified by the record and is affirmed.

*Affirmed.*